Bkodkick, J.
The clear and undisputed evidence establishes the following facts: The note set forth in the petition is the genuine note of Gideon Liggett, deceased. Said Gideon Liggett died March 17, 1902. On March 21, 1902, Martha Liggett filed her application in this, court for appointment as administratrix of the estate of Gideon Liggett, deceased, and on March 24, 1902, she presented her bond as such administratrix and the same was approved and letters of administration were issued to her. After the issuing of said letters, and while she was the duly appointed and qualified administratrix of the estate, said Martha Liggett drew from the People’s Bank in Marysville, Ohio, the sum of fifty dollars, which was, by her attorney, indorsed on said note. No payment was ever made on said note by Gideon Liggett, or any one for ■him, during his lifetime.Plaintiff’s petition herein was filed in this court May 7, 1903.
*520 The only question for determination by the court is whether this claim is barred by the statute of limitations. Counsel for plaintiff insists, in argument, that the statute of limitations does not apply, for either of four reasons, viz:
1. That the appointment of the administratrix, and the provision of the statutes allowing her eighteen months in which to p'ay the claim, suspends the operation of the statute as to his claim.
2. That the plaintiff, being administratrix of the estate, creates a ‘ ‘ continuing and subsisting trust, ’ ’ and thus brings the case within the exception stated in Section 4974, Revised Statutes.
3. The statute does not run against a married woman during the lifetime of her husband, for the reason that there is such unity of interest that public policy demands that she be not required to sue her husband; and
4. The indorsement by the administratrix of a payment on the note takes the ease out of the operation of the statute; and that if she was in error in making this payment, she could only be held responsible for whatever damage might result therefrom.
It is my earnest desire to fairly and impartially examine each of the claims made by counsel, in order that justice may be done in accordance with the facts as above set forth.
The note herein presented for allowance is a demand note and the statute of limitations commenced to run from the date of the note, and unless prevented in some manner above set forth, it was barred by the statute in fifteen years from the date thereof. Revised Statutes, 4980; Hill v. Henry, 17 O. R., 9, 11 and 12.
1. As to the first point. There being no statute especially suspending the operation of the statute of limitations on the appointment of an administrator, this point must be determined by reference to the decisions of the courts on similar questions, and the statutes of this state governing the administration of estates.
In the state of New York it is expressly provided by statute that: “From the death of the decedent until the first judicial *521 settlement of an account of his executor'or administrator, the running of the statute of limitations, against a debt due from the decedent to the accounting party, or any other cause of action, in favor of the latter against the decedent is suspended, ” and upon this statute the decisions of the Court of Appeals in Matter of Powers, 124 N. Y., 361, and O’Flynn v. Powers, 136 N. Y., 412, were leased.
In the ease of Hall, Administrator, v. Pratt et al, 5 O. R., 73, it was decided that “where a creditor is appointed administrator to his debtor, and dies without receiving assets, it is not to be assumed that the debt was paid, nor is it extinguished.” The court say, page 83, after reviewing'the decision in the case of Bigelow v. Bigelow, 4 O. R., 147:
“The rule is different, but like that applicable to the other class of cases, it looks to the same end the attainment of justice by direct means. It is that the administrator has a right to retain what is due to him out of the assets in his hands to be administered, because he can not sue himself. ’ ’
This decision followed the common law, and undoubtedly stated the law as it then was, 'and as it had been laid down ever since 3d, B'lackstone, 18, 19, but since that decision the law has been changed in Ohio by statute. Section 6099, Revised Statutes, provides that—
“No part of the assets of the deceased shall be retained by an executor or administrator, in satisfaction of his own debt or claim, until it shall have been proved to and allowed by the probate court; and such debt shall not be entitled to any preference over others of the same class. ’ ’
Under the present statutes the administratrix can not retain the assets of the estate until the claim -has been allowed by the probate court, and if the claim of the administratrix. is fifty dollars, or more, notice must first be given to the heirs before the probate court can .allow the claim.
The Supreme Court, in the case of Granger’s Administrator v. Granger, 6 O. R., 35, say, on page 42:
“We think it well settled, in ordinary cases, that where the statute of limitations once begins to run upon any subject, it *522 continues rto run to its completion, unless interrupted by some act of the party setting up the statute, which places the claim •within some of the exceptions provided in the aet. The death of the debtor is not such an act, and does not interrupt the running of the statute. ’ ’
The same principle is upheld in Williams el al v. The First Preb. Soc. et al, 1 O. S. R., 478, and Carey’s Administrator v. Robinson’s Administrator, 13 O. R., 181, 196.
The statute—Section 6099 above referred to—expressly provides that the debt of the administratrix shall not-be entitled to any preference over others of the same class. Now I do not believe that any one would for a moment controvert the point that if one of Mr. Liggett’s creditors—other than the -administratrix —had failed to present his claim to the administratrix for allowance or rejection until after it was barred by the statute, that such creditor could not recover. The duty of the creditor to present his claim to the administratrix is no stronger under our statutes than is the duty of the administratrix to present her claim to the probate court for allowance, and in my opinion where the statute points o-ut a method for the administratrix to follow she must pursue that method, or take her chances 'as any other creditor.
2. As to the second point raised in the argument I need take very little time. The relation of administratrix to the estate, heirs and creditors, is not in any sense a continuing and subsisting trust.' In order to bring the trust relation within the exceptions in Section 4974, Revised Statutes, as a continuing and subsisting trust, the remedy must be purely equitable. In this case an ample legal remedy prevails, so that the second point of counsel for plaintiff is not well taken. See Yearly v. Long, 40 O. S. R., 27, 32; Lescallet v. Rickner, 16 C. C., 461; Larwill v. Burke, 19 C. C., 449, and Duhme v. Mehner, 3 N. P., 266.
3. The third point raised by counsel for plaintiff is rather a novel question under the laws of Ohio, and to this I have given much study and thought.
The theory of the common law was, that a married woman was absolutely under the control of her husband, and greater *523 rights were given her than were given to infants or. persons under other disabilities. Perhaps this arose from the fact that all other classes of persons under disability might be protected by the appointment of guardians or trustees, but a married woman could act only through her husband or next friend. A gradual emancipation of married women has been steadily progressing however, in Ohio, until now by statute husband and wife are equal in every thing before the law, except the right of suffrage, so that the common law rule excepting married women from the operation of the statute of limitations is wholly abrogated in Ohio.
' In the case of Ashley v. Rockwell, 43 O. S. R., 386, the Supreme Court say, on page 389:
“The wife is always largely within the power of the husband. Sihe may have the naked legal right to sue, and that be of little value or avail to her if he commands hex to the contrary. She ought to have the right to sue after his influence, power, and command are no longer felt. ’ ’
But remember that this language was used to refute the argument of the repeal of a statute by implication, when married women were still within the saving clause of the statute of limitations in express terms.
In the case of Yocum, Adm’r, v. Allen, 58 O. S. R., 280, the question was raised by counsel that: “The theory of the unity of the husband and wife known to the common law has not been abrogated in Ohio. ’ ’ On page 292, the court say:
“An argument of much force is presented by counsel for plaintiff upon the proposition that the common law unity of husband and wife has not been abrogated even in Ohio, and hence, on grounds of public policy, the statute of limitations ought not to be applied to a claim of the wife 'against the husband, and abundant decisions of the courts of other states are adduced in its support. But we do not deem it necessary to enter upon the inquiry.”
This case arose upon a cause of action which- was held by the court to have accrued under the statute of limitations while married women were still within the saving clause of the statute, hence it can not apply to the question now.
*524 Let us examine the statutes of Ohio under which the cause of action in the case at bar accrued. Section 4978, Revised Statutes, was amended April 14, 1886, by omitting married women from the saving clause, and extending it only to infants, persons of unsound mind, or persons imprisoned.
On March 19th, 1887, Section 3112, Revised Statutes, was enacted, which provides:
“A husband or wife may enter into any engagement or transaction with the other, or with any other person, which either might if unmarried, subject, in transactions between themselves, to the general rules which control the actions of persons occupying confidential relations with each other.”
And there appears on the margin of the section in the Session Laws (O. L. Yol. 84, p. 132), the reference: “See 2 Pom. Eq., Sections 956, 1053.” This reference therefore, being on the margin of the original act of the General Assembly, would naturally be looked to for an explanation of the act itself, and by reference to 2 Pom. Eq. Jur., I find that Section 956 treats of the essence and good faith of the contracts themselves as between husband and wife, but not as to the remedy. The principle of this section is stated in the language of the learned judge delivering the opinion in Tale v. Willimnson, L. R., 1 Eq., 528, 536, as follows:
“The broad principle on which the court acts in cases of this description is, that wherever there exists such a confidence of whatever character that confidence may be, as enables the person in whom confidence or trust is reposed to exert influence over the person trusting him, the court will not allow any transaction between the parties to stand, unless there has been the fullest and fairest explanation and communication of every particular resting in the breast, of the one who seeks to establish a contract with the person so trusting him.”
And Section 1053 provides for trusts ex maleficio, or “where the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one’s weakness or necessities, or through any, other similar means or under any other similar circumstances which render it un *525 conscientious for the holder of the legal title to retain and enjoy the beneficial interest.” It will be noticed, that both these sections apply to purely equitable proceedings.
In Section 1099 of the same work (2 Pom. Eq.) the following principle is stated:
“ In a very few states the legislation has removed the statutory separate estate of married women entirely out of the equitable jurisdiction, by conferring upon the power of making contracts in relation to i't, and by rendering these contracts personally binding upon them by law, and enforceable against them personally by ordinary legal actions, pecuniary judgments, and executions. ’
Note 1, on page 1638, to this section says: “Equity can not, of course, deal with oases arising under this legislation, ’ ’ and cites: “Ohio, Revised Statutes, 1890, Section 3112, 3114.” And so important does this legislation seem to the learned author that he gives the language of Sections 3112, 3114 in the notes to this section, while he only cites the legislation of other states.
The evident intent of the General Assembly being to absolutely emancipate the wife and place her on an equal footing with the husband there is, therefore, now under our statutes, as I construe them, no more authority of law for exempting married women from the operation of the statutes of limitations than there is for exempting married men therefrom.
In the case of Hart et al v. Sarvis et al, 3 N. P., 316, Judge Sayler of the Hamilton County Court of Common Pleas held that:
“An action will lie between husband and wife, and debts due a woman are not extinguished by her intermarriage with the debtor. ’ ’
I am, therefore, of the opinion that-from a fair construction of the statutes of this state the common law doctrine of the unity of husband and wife, in so far as it would apply to this ease, has been abrogated in Ohio, by statute.
4. This leaves the remaining point as to the effect of the indorsement of the fifty dollars as a payment on the note by the plaintiff after the death of Gideon Liggett.. If this had been *526 the claim of some creditor other than the administratrix the payment made by her would clearly have prevented the running of the statute (Niemcewicz v. Bartlett, Administrator, 13 O. R., 271). But the language of Section 6099, Revised Statutes, is clear and positive in its character, viz :
Porter & Porter, for plaintiff.
D. W. Ayers, contra.
“No part of the assets of the deceased shall be retained by an executor or administrator, in satisfaction of his own debt or claim, until it shall have been proved to and allowed by the probate court.”
Section 6100, Revised Statutes, provides that if the amount of the claim is fifty dollars or more, then the same proceedings shall be had as are now before the court. If, then, the administratrix can allow a payment of fifty dollars on the claim as a valid payment so as to take the claim out of the operation of the statute of limitations, without the intervention of the probate court, this proceeding is wholly unnecessary, and the statute of no effect. From the time of day named in the indorsement on the note the plaintiff had a full half day before the expiration of fifteen years, in which to have filed her petition in this court and save her rights under Sections 4987 and 4988, Revised Statutes, by following up the filing of her petition with service of notice, and thus to have prevented the running of the statute of limitations against her claim, and, under the testimony adduced herein, have recovered the full amount of her claim. The plaintiff, therefore, by her own negligence having permitted the statute of limitations to bar her right to recover herein, I am compelled under the law, as I construe it, to reject her claim.
The claim of the plaintiff is, therefore, rejected, and judgment rendered against her as administratrix for the cost of this proceeding. The costs to be paid out of the estate.

Note : On appeal the above judgment was affirmed by the court of common pleas, and on error was again affirmed by the circuit court.